CHRISTOPHER CELENTINO (131688)
christopher.celentino@dinsmore.com
CHRISTOPHER B. GHIO (259094)
christopher.ghio@dinsmore.com
YOSINA M. LISSEBECK (201654)
yosina.lissebeck@dinsmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101
Tele: 619.400.0500; Fax: 619.400.0501


KAREN S. HOCKSTAD (OH 61308) (Admitted pro hac vice)
karen.hockstad@dinsmore.com
MATTHEW H. SOMMER (OH 101721; NC 51004) (Admitted pro hac vice)
matthew.sommer@dinsmore.com
DINSMORE & SHOHL LLP
191 W. Nationwide Blvd., Suite 200
Columbus, OH 43215
Tele: 614-628-6930; Fax: 614-628-6890

*Attorneys for Richard A. Marshack, Trustee of the LPG Liquidation Trust*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor.<br><br>───────────────<br><br>RICHARD A. MARSHACK,<br>Trustee of the LPG Liquidation Trust,<br><br>Plaintiff,<br><br>v.<br><br>WORLD GLOBAL FUND, LLC, *et al.*,<br><br>Defendants. | Chapter 11<br><br>Bankr. Case No. 8:23-bk-10571 SC<br><br>Adv. Proc. No.: 8:25-ap-01105-SC<br><br>**NOTICE OF UNREPORTED CASES IN PLAINTIFF'S NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR ISSUANCE OF AN ORDER TO SHOW CAUSE REGARDING CONTEMPT AGAINST OPTIMUMBANK AND OPTIMUMBANK HOLDINGS, INC. FOR FAILURE TO COMPLY WITH THE ORDER OF THIS COURT AND HOLDING OPTIMUMBANK AND OPTIMUMBANK HOLDINGS, INC. IN CONTEMPT**<br><br>Judge: Hon. Scott C. Clarkson<br><br>Place: Courtroom 5C<br>411 W Fourth Street<br>Santa Ana, CA 92701 |

### NOTICE OF UNREPORTED DECISION

Pursuant to Local Bankruptcy Rule 9013(c)(3)(D), Plaintiff Richard A. Marshack, as the Trustee of the LPG Liquidation Trust, gives notice to this Court that it has cited to unreported decision in its contemporaneously filed Renewed Notice of Motion and Renewed Motion for Issuance of an Order to Show Cause Regarding Contempt Against OptimumBank and OptimumBank Holdings, INC., for Failure to Comply with the Subpoena and for an Order Holding OptimumBank and OptimumBank Holdings, INC., in Contempt. Complete and unmarked copies of the cited to decisions are attached hereto.

*Respectfully submitted,*

Dated:  June 8, 2026

DINSMORE & SHOHL LLP

By: */s/  Karen S. Hockstad*
Karen S. Hockstad
Yosina M. Lissebeck
*Attorneys for Richard A. Marshack, Plaintiff and Trustee of the LPG Liquidation Trust*

2

Positive
As of: February 26, 2026 4:08 PM Z

# *Kvassay v. Kvassay (In re Kvassay)*

United States Bankruptcy Appellate Panel for the Ninth Circuit

September 22, 2016, Argued and Submitted at Pasadena, California; October 6, 2016, Filed

BAP No. CC-15-1420-KiTaKu

**Reporter**
2016 Bankr. LEXIS 3654 *

In re: PETER EMANUEL KVASSAY, Debtor.PETER EMANUEL KVASSAY, Appellant, v. ROBERT V. KVASSAY, Trustee of the Kvassay Family Trust dated February 26, 1993; RUSSAKOW & TAN, LLP; RUSSAKOW, GREENE & TAN LLP; MATTHEW C. BROWN, Appellees.

**Notice:** THIS DISPOSITION IS NOT APPROPRIATE FOR PUBLICATION. ALTHOUGH IT MAY BE CITED FOR WHATEVER PERSUASIVE VALUE IT MAY HAVE, IT HAS NO PRECEDENTIAL VALUE. SEE 9TH CIR. BAP RULE 8024-1.

**Subsequent History:** Affirmed by *Kvassay v. Kvassay (In re Kvassay), 711 Fed. Appx. 411, 2018 U.S. App. LEXIS 3283 (9th Cir., Feb. 12, 2018)*

**Prior History:** **[*1]** Appeal from the United States Bankruptcy Court for the Central District of California. Bk. No. 2:12-bk-40267-DS. Honorable Deborah J. Saltzman, Bankruptcy Judge, Presiding.

## Core Terms

bankruptcy court, injunction, probate action, contempt, state court, nondischargeability, drive, prepetition, distributive share, attorney's fees, bankruptcy case, automatic stay, void, permanent injunction, obtain a judgment, hold in contempt, enjoin, repair, discharge order, diminish, offset

## Case Summary

### Overview

HOLDINGS: [1]-The bankruptcy court (BC) erred by not articulating any findings for the Contempt Order, but such error was harmless; [2]-The BC did not abuse its discretion by not finding the trustee of the family trust ("trustee") in contempt of the discharge injunction because the debts at issue had not yet been discharged; [3]-While the determination of whether a debt is dischargeable under *11 U.S.C.S. § 523(a)(2), (4)* or *(6)* is exclusively within the BC's jurisdiction, the predicate facts which may form the basis for such a determination may be litigated in state court; [4]-Necessary to a finding of contempt under *11 U.S.C.S. § 105(a)* is that the offending party willfully violated the discharge injunction. Because no such injunction was applicable to the debts at issue as a matter of law, the trustee could not have violated it; [5]-Accordingly, the BC did not abuse its discretion.

### Outcome
The court affirmed the order denying debtor's motion for an order to show cause why the trustee of the family trust should not be held in contempt for violating the discharge injunction.

## LexisNexis® Headnotes

Civil Procedure > Sanctions > Contempt > Civil Contempt

Bankruptcy Law > ... > Judicial Review > Standards of Review > Abuse of Discretion

*HN1* The bankruptcy court's decision respecting civil contempt and sanctions is reviewed for abuse of discretion. A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are clearly erroneous.

Bankruptcy Law > Procedural Matters > Contested Matters

Business & Corporate Compliance > ... > Discharge & Dischargeability > Effect of Discharge > Protection of Debtors

Bankruptcy Law > Discharge & Dischargeability > Effect of Discharge > Protection of Debtors

Civil Procedure > Sanctions > Contempt > Civil Contempt

*HN2* A motion to determine whether a creditor should be held in contempt for violating the discharge injunction is a contested matter. *Fed. R. Bankr. P. 9020* (Contempt Proceedings--which provides that *Fed. R. Bankr. P. 9014* governs a motion for an order of contempt). As a contested matter, the bankruptcy court was required to make findings of fact, either orally on the record or in a written decision. *Fed. R. Bankr. P. 9014(c)* (incorporating *Fed. R. Bankr. P. 7052*, which in turn incorporates *Fed. R. Civ. P. 52*). The findings must be sufficient to indicate the factual basis for the court's ultimate conclusion. The findings must be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision. In the absence of complete findings, the court may vacate a judgment and remand to the bankruptcy court to make the required findings. The court may conduct appellate review, even when a bankruptcy court does not make formal findings, however, if a complete understanding of the issues may be obtained from the record as a whole or if there can be no genuine dispute about omitted findings.

Business & Corporate Compliance > ... > Discharge & Dischargeability > Effect of Discharge > Protection of Debtors

Bankruptcy Law > Discharge & Dischargeability > Effect of Discharge > Protection of Debtors

Business & Corporate Compliance > Bankruptcy > Case Administration > Bankruptcy Court Powers

Bankruptcy Law > Case Administration > Bankruptcy Court Powers

*HN3* A party who knowingly violates the discharge injunction can be held in contempt under *11 U.S.C.S. § 105(a)*.

Bankruptcy Law > ... > Automatic Stay > Scope of Stay > Claims Against Debtors

Business & Corporate Compliance > ... > Discharge & Dischargeability > Effect of Discharge > Protection of Debtors

Bankruptcy Law > Discharge & Dischargeability > Effect of Discharge > Protection of Debtors

Business & Corporate Compliance > ... > Administrative Powers > Automatic Stay > Duration of Stay

Bankruptcy Law > Administrative Powers > Automatic Stay > Duration of Stay

*HN4* When a bankruptcy petition is filed, *11 U.S.C.S. § 362* automatically provides the debtor with a temporary stay or injunction against certain actions by creditors against the debtor. Upon the granting of a discharge, the temporary injunction of *§ 362* dissolves and is replaced by the permanent injunction of *11 U.S.C.S. § 524*; refer to *§*

*362(c)(2)(C)*. Essentially, this permanent injunction--the discharge injunction--enjoins creditors from attempting to collect from the debtor or the debtor's assets debts that have been discharged in bankruptcy.

Business & Corporate Compliance > ... > Discharge & Dischargeability > Effect of Discharge > Protection of Debtors

Bankruptcy Law > Discharge & Dischargeability > Effect of Discharge > Protection of Debtors

**HN5** The "such debt" language of *11 U.S.C.S. § 524(a)(2)* refers to "any debt discharged under *section 727*," as stated in *§ 524(a)(1)*. Thus, nondischargeable debts are not subject to the discharge injunction.

Business & Corporate Compliance > ... > Discharge & Dischargeability > Effect of Discharge > Protection of Debtors

Bankruptcy Law > Discharge & Dischargeability > Effect of Discharge > Protection of Debtors

Business & Corporate Compliance > Bankruptcy > Discharge & Dischargeability > Liquidations

Bankruptcy Law > Discharge & Dischargeability > Liquidations

Bankruptcy Law > Discharge & Dischargeability > Exceptions to Discharge

**HN6** The permanent injunction provided by *11 U.S.C.S. § 524(a)(2)* enjoining creditor actions against debts discharged under *11 U.S.C.S. § 727* must be read in conjunction with *§ 727(b)*, which provides that except as provided in *11 U.S.C.S. § 523*, a discharge under *§ 727(a)* discharges the debtor from all debts that arose before the date of the order for relief under this chapter. Thus, the discharge injunction does not enjoin actions of creditors who successfully invoke *11 U.S.C.S. § 523*, which provides a list of exceptions to discharge. In other words, upon the timely filing of a complaint objecting to dischargeability of a debt under *§ 523*, the discharge injunction does not apply with respect to that debt until the bankruptcy court makes a determination as to the dischargeability of that debt. *11 U.S.C.S. § 523* compels this result.

Bankruptcy Law > Discharge & Dischargeability > Exceptions to Discharge

Business & Corporate Compliance > Bankruptcy > Discharge & Dischargeability > Liquidations

Bankruptcy Law > Discharge & Dischargeability > Liquidations

**HN7** A debt is not discharged if a timely complaint is filed objecting to discharge of that debt under *11 U.S.C.S. § 523(a)(2)* (fraud), or (4) (fraud or defalcation while acting in fiduciary capacity, larceny, or embezzlement) or (6) (willful and malicious injury) unless and until the bankruptcy court denies the objection.

Bankruptcy Law > Discharge & Dischargeability > Exceptions to Discharge

Bankruptcy Law > Procedural Matters > Jurisdiction > Federal District Courts

Bankruptcy Law > Administrative Powers > Automatic Stay > Relief From Stay

**HN8** While the determination of whether a debt is dischargeable under *11 U.S.C.S. § 523(a)(2)*, *(4)* or *(6)* is exclusively within the bankruptcy court's jurisdiction, the predicate facts which may form the basis for such a determination may be litigated in state court. A bankruptcy court can modify the automatic stay to permit state court litigation to proceed to judgment for purpose of establishing a debt at issue in a pending nondischargeability action so that issue preclusion may be used to limit what is later raised in the nondischargeability action.

Case 8:25-ap-01105-SC   Doc 364-1   Filed 06/08/26   Entered 06/08/26 10:11:35   Desc
Notice of Unreported Cases   Page 6 of 26
2016 Bankr. LEXIS 3654, *1

Page 4 of 12

Business & Corporate Compliance > Bankruptcy > Case Administration > Bankruptcy Court Powers

Bankruptcy Law > Case Administration > Bankruptcy Court Powers

Business & Corporate Compliance > ... > Discharge & Dischargeability > Effect of Discharge > Protection of Debtors

Bankruptcy Law > Discharge & Dischargeability > Effect of Discharge > Protection of Debtors

**HN9** Necessary to a finding of contempt under *11 U.S.C.S. § 105(a)* is that the offending party willfully violated the discharge injunction.

**Counsel:** Troy A. Stewart argued for appellant, Peter E. Kvassay.

Matthew C. Brown of the Law Office of Matthew C. Brown argued for appellee, Robert V. Kvassay, Trustee of the Kvassay Family Trust dated 02/26/1993.

**Judges:** Before: KIRSCHER, TAYLOR and KURTZ, Bankruptcy Judges.

# Opinion

**MEMORANDUM**

Chapter 7[1] debtor Peter E. Kvassay[2] appeals an order denying his motion for an order to show cause why appellee Robert V. Kvassay, Trustee of the Kvassay Family Trust dated 02/26/1993 ("Trust"), should not be held in contempt for violating the discharge injunction. During Peter's bankruptcy case, Robert obtained relief from the automatic stay to proceed to final judgment in a probate action that had been filed against Peter prepetition. Robert also filed a timely adversary complaint, seeking to except the probate action debts from Peter's discharge under *§ 523(a)(2), (4)* and *(6)*.

During the course of the probate action, but before the dischargeability action had been decided, Peter received his discharge. Peter contends that because Robert did not obtain the probate judgments against him until after his discharge was entered, the debts subject to these judgments were discharged, the judgments are void and Robert's actions violated and continue to violate the discharge injunction under *§ 524(a)(2)*. The bankruptcy court denied Peter's motion. We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Prepetition events

Peter and Robert are brothers. They have a third brother, Richard Kvassay. The brothers each hold a one-third beneficial interest in property held by the Trust established by their parents, who are now deceased. The Trust corpus consists of a 3.5 acre residential estate located in Los Angeles (the "Hill Drive Property"), which includes a 5,400 square foot main house and two guest houses. The recent relationship between Robert and his two brothers has been contentious at best.

---

[1] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, *11 U.S.C. §§ 101-1532*, and the *Federal Rules of Bankruptcy Procedure, Rules 1001-9037*.

[2] Since both parties have the same surname, we refer to them by first name to avoid confusion. **[*2]**  No disrespect is intended.

Upon their parents' death, Peter became the trustee of the Trust in October 2006. In January 2007, Peter resigned as trustee and Robert succeeded him as trustee. **[*3]** Peter's resignation and Robert's succession as trustee was memorialized in a document referred to as the "Work Plan." The Work Plan also included the brothers' agreement to repair and sell the Hill Drive Property and discussed how expenses related to those efforts would be handled. At the time, Peter and Richard lived at the Hill Drive Property and had done so since the 1980's and 1960's, respectively.

Robert was in charge of renovating the Hill Drive Property, which had fallen into severe disrepair at the hands of his brothers. The property had no running water or functioning sewer pipes for approximately seven years, and all three houses on the estate had severe rodent infestations, mountains of decaying paper and food material, hoards of clothing and other personal items, junk cars and even human waste. Robert ultimately expended several hundred thousand dollars of his own money to clean and renovate the Hill Drive Property. In the end, Peter and Richard prevented Robert from completing the necessary cleaning and repairs for sale of the property.

In July 2007, and unbeknownst to Robert, Peter represented himself as trustee of the Trust and obtained a $1.5 million loan secured by the **[*4]** Hill Drive Property. Robert learned of the loan in February 2008 and requested an accounting and attempted to recoup the monies from Peter. Peter failed to account for approximately $800,000. When Peter refused to make payments on the loan, Robert obtained a personal loan for the same amount to prevent foreclosure of the Hill Drive Property.

In 2010, Robert, on behalf of the Trust, sued Peter and Richard, seeking the following relief: (1) eviction of Peter and Richard; (2) a determination that the Work Plan had no legal effect; (3) a determination that the $1.5 million loan Peter obtained was Trust property; and (4) an offset against Peter's distributive share of $1.5 million, plus attorney's fees and costs, based on his fraud and willful acts to thwart the repair and sale of the Hill Drive Property, or, if the $1.5 million exceeded his distributive share, that Peter be personally liable for the remaining amount he fraudulently obtained (the "Probate Action").

The state court initially ordered Peter and Richard to vacate the Hill Drive Property and authorized Robert to remove their personal belongings in order to complete repairs and sell it. Peter and Richard appealed that ruling and **[*5]** lost; they were also denied review by the California Supreme Court. To stay the eviction on appeal, Peter and Richard posted an appeal bond of $216,000, which Robert later tried to recover after his brothers had exhausted their appeals with respect to the eviction (the "Bond Funds").

Meanwhile, Robert filed his first accounting in the Probate Action to report all administrative expenses for the Trust from the period of January 2007 to June 2010. Robert claimed he was due $221,000 based on the Work Plan for expenses related to repairs on the Hill Drive Property ("Work Plan Claim I"). Robert also requested reimbursement for funds he personally expended in repairing and maintaining the Hill Drive Property totaling $447,731.66 ("Work Plan Claim II").

In November 2011, Peter and Richard sued Robert for, among other things, fraud and breach of contract (the "Civil Action").

## B. Postpetition events

Peter filed his chapter 7 bankruptcy case on September 5, 2012. He listed Robert as an unsecured creditor in his Schedule F with the following claims: (1) Probate Claim, May 2010, $1,500,000; (2) Probate Claim, October 2010, $216,000; (3) Civil Action Claim, August 2012, $10,500; (4) Probate Claim, **[*6]** February 2011, $2,100. Peter also listed the Probate Action and the Civil Action in his Statement of Financial Affairs.

Although not mentioned in Peter's opening appeal brief or included in his excerpts of the record, Robert moved for relief from the automatic stay and/or annulment of the stay in September 2012, seeking to proceed with the pending Probate Action and related Civil Action in state court, and for a determination that any actions taken in those proceedings postpetition were not void. A fourteen-day trial in the Probate Action was set for January 13, 2013. The

bankruptcy court granted Robert's motion, terminating the stay and annulling it retroactively to the petition date. The stay relief order authorized Robert to proceed to final judgment (including any appeals) in the Probate Action and Civil Action.

Also not mentioned in Peter's opening appeal brief or included in his excerpts of the record, Robert filed a timely dischargeability action against Peter, seeking to except debts arising from the Probate Action from discharge under *§ 523(a)(2)*, *(4)* and *(6)*. Robert contended that as a result of Peter's alleged fraud, conversion and waste, he and/or the Trust was damaged in the amount of $1.5 **[*7]** million, plus those funds Robert expended to avoid foreclosure of the Hill Drive Property and attorney's fees. Robert later amended his complaint, seeking relief only under *§ 523(a)(4)* and *(6)*.

In December 2012, the state court entered judgment for Robert with respect to the Bond Funds and awarded him $192,660.00 jointly and severally against Peter and Richard. Peter and Richard appealed that decision and lost. Notably, the appellate court in its decision stated that the Bond Funds judgment was not void and did not violate the discharge injunction as Peter claimed.

### 1. Post-discharge events

Peter received a discharge on January 8, 2013, just days before trial in the Probate Action was to begin. The discharge order — Official Form B18 — states that the "debtor is granted a discharge under *section 727 of title 11, United States Code* . . . ." but warns in all upper case letters, "SEE THE BACK OF THIS ORDER FOR EXCEPTIONS AND OTHER IMPORTANT INFORMATION." The back side of the discharge order provides a list of debts that are **not** discharged in a chapter 7 case, including: "(h) Debts that the bankruptcy court, under *section 523 of the Bankruptcy Code* or other applicable law, specifically has decided or will decide in this bankruptcy case are not discharged." Peter's case was closed **[*8]** on January 29, 2013.

Meanwhile, trial proceeded in the Probate Action from January 22, 2013, through May 23, 2013.

Peter moved to reopen his bankruptcy case in May 2013 to file a motion alleging claims that Robert had violated the automatic stay and discharge injunction by actions he had taken in the Probate Action, including obtaining the Bond Funds judgment and presenting a total claim for damages at the end of trial against

Peter for over $3.5 million. The motion was granted and Peter's case was reopened on May 28, 2013. Peter's bankruptcy case and Robert's dischargeability action against Peter were reassigned to the Hon. Deborah J. Saltzman on May 12, 2014.

### a. Results of the state court proceedings

After trial and Peter's discharge, the state court issued a variety of minute orders and final decisions in the Probate Action. Ultimately, it approved Robert's Work Plan Claim I for $221,000 and ordered that he be reimbursed for expenses of $572,772, plus attorney's fees and costs. The state court also ruled that the $1.5 million in loan funds belonged to the Trust and that Peter's distributive share would be offset by the $973,520 in unaccounted funds not used for the benefit of the Hill **[*9]** Drive Property. Peter and Richard were also held jointly and severally liable for Robert's attorney's fees and costs.

Peter appealed the probate judgments, which were consolidated for appeal. The California Court of Appeal affirmed, but ordered that the Work Plan Claim I be reduced from $221,000 to $212,500 and that Robert's reimbursement claim be reduced from $572,772 to $360,272 (which Peter refers to as the "Work Plan Claim II"), based on mathematical errors made by the trial court.

Meanwhile, Robert filed the ordered second accounting for the Trust in October 2013, which included a request that $315,298.77 in attorney's fees and costs expended on behalf of the Trust in litigating the Probate Action against Peter and Richard be offset against their distributive shares in the Trust. Robert contended that none of the fees or

costs would have been incurred but for Peter and Richard's malfeasance and theft against the Trust. Robert further asserted that he was owed an additional $187,200 based on the Work Plan ("Work Plan Claim III").

**2. Peter's motion for contempt**

On November 18, 2015, Peter moved for an order to show cause why Robert (and his attorneys) should not be held in contempt **[*10]** for violating the discharge injunction ("Contempt Motion"). In short, Peter argued that the judgments Robert obtained, or attempted to obtain, in the Probate Action were based on prepetition claims that were discharged under *§ 727(b)* on January 8, 2013. Thus, argued Peter, Robert's actions to collect, recover or offset these discharged prepetition debts against Peter or his beneficial interest in the Trust violated *§ 524(a)(2)*, and therefore Robert should be sanctioned for contempt under *§ 105(a)*.

Specifically, Peter contended Robert had violated the discharge injunction by:

(1) obtaining a judgment on the fraud claim of $973,520 (the loan funds) on the basis of a prepetition claim under *Cal. Probate Code § 850(a)(3)(B)* that was discharged;
(2) obtaining a judgment on Work Plan Claim I of $212,500 (which diminished Peter's distributive share in the Trust by $70,833.33) on the basis of a prepetition contract claim that was discharged;
(3) obtaining a judgment on Work Plan Claim II of $360,272 (which diminished Peter's distributive share by $120,090.66) on the basis of a prepetition contract claim that was discharged;

(4) attempting to obtain a judgment on Work Plan Claim III of $187,000 (which diminished Peter's distributive share by $62,400) on **[*11]** the basis of a prepetition contract claim that was discharged;
(5) attempting to obtain a judgment for $332,897.74 in attorney's fees and costs (which diminished Peter's distributive share by $166,448.87) in connection with these prepetition claims that were discharged;
(6) attempting to obtain a judgment on state law statutory claims for Trust administration and other Trust related expenses paid for personally by Robert due to Peter's malfeasance totaling $296,298.42 (which diminished Peter's distributive share in the Trust by $148,149.21); and
(7) disputing that the Bond Funds judgment of $192,660 was based on a prepetition claim that was discharged.

Peter further argued that the judgments at issue, which made determinations as to Peter's personal liability, were void because they were based on discharged debts. In addition, with respect to the fraud claim judgment of $973,520, Peter argued that only the bankruptcy court had jurisdiction to adjudicate that claim because it was the kind of debt specified in *§ 523(a)(2)*, *(4)* or *(6)*. For the alleged contempt, Peter sought damages of $1,164,443.99 (the total of the fraud judgment and Work Plan Claims I and II), plus attorney's fees and costs of $146,871.50 **[*12]** he incurred in defending these claims.

Robert did not file an opposition to the Contempt Motion. Without a hearing, the bankruptcy court entered an order denying the Contempt Motion ("Contempt Order"). Peter timely appealed.

**II. JURISDICTION**

The bankruptcy court had jurisdiction under *28 U.S.C. §§ 1334* and *157(b)(2)(O)*. We have jurisdiction under *28 U.S.C. § 158*.

**III. ISSUES**

1. Did the bankruptcy court provide sufficient findings to support the Contempt Order?

2. Did the bankruptcy court abuse its discretion by not finding Robert in contempt for willfully violating the discharge injunction?

## IV. STANDARD OF REVIEW

*HN1* The bankruptcy court's decision respecting civil contempt and sanctions is reviewed for abuse of discretion. *Rediger Inv. Servs. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.), 503 B.R. 726, 731-32 (9th Cir. BAP 2013)*; *Nash v. Clark Cty. Dist. Attorney's Office (In re Nash), 464 B.R. 874, 878 (9th Cir. 2012)*. A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are clearly erroneous. *TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011)*.

## V. DISCUSSION

**A. The bankruptcy court erred by not articulating any findings for the Contempt Order, but such error was harmless in this case**.

The bankruptcy court made no findings — legal or factual — in the Contempt Order; it simply stated: "The court has considered the [Contempt Motion] and has determined that there are no grounds for the issuance **[*13]** of an order to show cause. Therefore, IT IS HEREBY ORDERED THAT the [Contempt Motion] is denied." Peter contends the bankruptcy court abused its discretion by failing to provide any factual or legal basis for why it denied the Contempt Motion.

*HN2* A motion to determine whether a creditor should be held in contempt for violating the discharge injunction is a contested matter. See *Rule 9020* (Contempt Proceedings — which provides that *Rule 9014* governs a motion for an order of contempt); *Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186, 1189 (9th Cir. 2001)*. As a contested matter, the bankruptcy court was required to make findings of fact, either orally on the record or in a written decision. See *Rule 9014(c)* (incorporating *Rule 7052*, which in turn incorporates Civil *Rule 52*). The findings must be sufficient to indicate the factual basis for the court's ultimate conclusion. *Unt v. Aerospace Corp., 765 F.2d 1440, 1444 (9th Cir. 1985)*.

"'The findings must be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.'" *Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 815 (9th Cir. 2003)* (quoting *Unt, 765 F.2d at 1444*). In the absence of complete findings, we may vacate a judgment and remand to the bankruptcy court to make the required findings. See *United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005)*.

We may conduct appellate review, even when a bankruptcy court does **[*14]** not make formal findings, however, "if a complete understanding of the issues may be obtained from the record as a whole or if there can be no genuine dispute about omitted findings." *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 919-20 (9th Cir. BAP 2011)*.

In reviewing the docket from the dischargeability action, Robert had filed a motion for partial summary judgment on his *§ 523(a)(4)* and *(6)* claims on the basis of issue preclusion. In defense of that motion, Peter argued that Robert's post-discharge state court judgments were void and violated the discharge injunction, the same argument he raised in the Contempt Motion.

At a November 19, 2015 hearing on Robert's motion in the adversary (which was the day after Peter had filed his Contempt Motion), the bankruptcy court set forth in detail why it rejected Peter's arguments. In short, it found that Peter's arguments lacked merit and showed a fundamental misunderstanding of bankruptcy law. Hr'g Tr. (Nov. 19, 2015) 5:24-10:14. After discussing the purpose of the discharge injunction under *§ 524*, the bankruptcy court stated the following:

THE COURT: The key notion of *Section 524* is that it refers to a dischargeable debt. A non-dischargeable debt is not subject to the discharge injunction. This is basic Ninth Circuit law. . . .

Now, the language **[\*15]** in *Section 523 of the Bankruptcy Code* is also quite clear as to what the discharge and the discharge injunction by extension applies to. *Section 523(a)* provides that a discharge under *Section 727* of this title does not discharge an individual debtor from any debt and then goes on to enumerate the variety of debts that are not discharged and that, of course, includes [debts] that are not dischargeable under *Section 523(a)(4)* and *523(a)(6)*.

Now, in this case there was a timely action under *Section 523* to determine the liability -- the dischargeability of the debt owed to the plaintiff for the discharge and the discharge injunction do not apply to those debts. So the argument that an action in state court that was properly brought, that was properly continued after seeking and receiving relief from the automatic stay, that somehow this action violates the discharge injunction again is a basic misunderstanding of bankruptcy law.

Now, this point is made even more clear in the discharge order for the debtor in this case. . . . The order goes on to say in all capitals, "See the back of this order for exception." You turn to the back of the discharge order and we see a heading that says, "Debts that are not discharged." And line (h):

"The type of debt that is not discharged includes debts **[\*16]** [that] the Bankruptcy Court under *Section 523 of the Bankruptcy Code* or other applicable law specifically has decided or will decide in this bankruptcy case are not discharged."

There is no question that the debts in this case that are subject to the dischargeability proceeding were not discharged by the 2013 discharge of the debtor. That's why we're here. . . .

Now, I want to also make clear, as I alluded to before, that the probate case is entirely proper as it relates to the bankruptcy case. The plaintiff received relief from the automatic stay to pursue the action and the timing of the discharge before the conclusion of the state law action is irrelevant because there was a pending *Section 523* dischargeability action. The discharge did not apply to the debt at issue in the state court proceeding and there could be no violation of the discharge injunction.

Id. at 6:21-24, 7:3-22, 8:3-15, 8:20-9:4. The court then went on to discuss *Lakhany v. Khan (In re Lakhany), 538 B.R. 555 (9th Cir. BAP 2015)*, which it found to be similar to the situation here.

The bankruptcy court also told Robert to not file an opposition to Peter's Contempt Motion because it planned to enter an order denying the motion "for the same reason that I stated on the record at the beginning of my comments today. . . . [S]o I will **[\*17]** issue an order without any need for further briefing or comment." Hr'g Tr. (Nov. 19, 2015) 15:4-15, 15:19-20.

Unfortunately, Peter and his counsel did not appear at that hearing. However, we presume they have since reviewed the transcript and are fully aware as to why the bankruptcy court denied the Contempt Motion, even though Peter has made no mention of that hearing or the findings made there in his appeal brief.

It would have been better practice for the bankruptcy court to articulate the findings it announced on the record at the summary judgment hearing in the dischargeability action in its Contempt Order (which it apparently intended to do but for reasons unknown did not), as opposed to stating only that no grounds existed to grant the Contempt Motion. Nonetheless, because the transcript from the November 19 hearing provides us with a clear understanding of the basis for why the bankruptcy court denied the Contempt Motion, which was a pure legal basis, we will review the merits of that decision.

**B. The bankruptcy court did not abuse its discretion by not finding Robert in contempt of the discharge injunction because the debts at issue have not yet been discharged**.

*HN3* A party who knowingly **[\*18]** violates the discharge injunction can be held in contempt under *§ 105(a)*. *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006)*. We begin by noting what is not disputed in this case. First, Robert was granted relief from stay to proceed to judgment, including any appeals, in the Probate

Action. Thus, while the bankruptcy court retained control over the final decision regarding nondischargeability, it expressly allowed liquidation of the claims and determination of facts required for nondischargeability to proceed in the Probate Action. Also, the state court judgments at issue are based on Peter's prepetition conduct, which Robert alleged consisted of nondischargeable claims of fraud, conversion and waste. Finally, Robert timely filed a dischargeability action against Peter in accordance with *Rule 4007*, seeking relief for claims under *§ 523(a)(2)*, *(4)* and *(6)* in connection with the Probate Action debts (but he later dismissed his *(a)(2)* claim).

*HN4* When a bankruptcy petition is filed, *§ 362* automatically provides the debtor with a temporary stay or injunction against certain actions by creditors against the debtor. Upon the granting of a discharge, the temporary injunction of *§ 362* dissolves and is replaced by the permanent injunction of *§ 524*. See *§ 362(c)(2)(C)*. Essentially, this permanent injunction **[\*19]** — the discharge injunction — enjoins creditors from attempting to collect from the debtor or the debtor's assets debts that have been discharged in bankruptcy. *Section 524(a)* states, in pertinent part, that a discharge:

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under *section 727* . . . ;

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any **such debt** as a personal liability of the debtor, or from property of the debtor, . . . .

(emphasis added). *HN5* The "such debt" language refers to "any debt discharged under *section 727*," as stated in *§ 524(a)(1)*. *In re Lakhany, 538 B.R. at 562*; *Aldrich v. Imbrogno (In re Aldrich), 34 B. R. 776, 779 n.1 (9th Cir. BAP 1983)*. Thus, nondischargeable debts are not subject to the discharge injunction. *Boeing N. Am., Inc. v. Ybarra (In re Ybarra), 424 F.3d 101 1027 n.11 (9th Cir. 2005)*; *Fla. Dep't of Revenue v. Diaz (In re Diaz), 647 F.3d 1073, 1088 (11th Cir. 2011)* (discharge injunction prohibits collection only with respect to dischargeable debts and does not apply to nondischargeable debts). Therefore, Robert could not violate the discharge injunction if he was taking action to recover debts that are nondischargeable.

*HN6* The permanent injunction provided by *§ 524(a)(2)* enjoining creditor actions against debts discharged under *§ 727* must be read in conjunction **[\*20]** with *§ 727(b)*, which provides: **Except as provided in *section 523* of this title**, a discharge under *subsection (a)* of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter[.]" (Emphasis added). Thus, the discharge injunction does not enjoin actions of creditors who successfully invoke *§ 523*, which provides a list of exceptions to discharge. *Ackerman v. Eber (In re Eber), 687 F.3d 1123, 1128 (9th Cir. 2012)* (citing *In re Aldrich, 34 B.R. at 779*).

In other words, upon the timely filing of a complaint objecting to dischargeability of a debt under *§ 523*, the discharge injunction does not apply with respect to that debt until the bankruptcy court makes a determination as to the dischargeability of that debt. See *In re Eber, 687 F.3d at 1128*; *In re Aldrich, 34 B.R. at 779-81*; *BUKE, LLC v. Eastburg (In re Eastburg), 440 B.R. 851, 855, 857-58 (Bankr. D.N.M. 2010)*, aff'd on other grounds, *447 B.R. 624 (10th Cir. BAP 2011)* (discharge injunction does not apply to a debt when a timely objection to dischargeability of the debt is made under *§ 523(a)(2)*, *(4)* or *(6)* unless and until the bankruptcy court determines that the debt is discharged); *In re Jenkins, 330 B.R. 625, 629 (Bankr. E.D. Tenn. 2005)* (so long as it remains possible that a particular debt could be declared nondischargeable under *§ 523*, the permanent applicability of *§ 524(a)* protections to such debt cannot be determined) (citing *In re Schultz, 251 B.R. 823, 830 (Bankr. E.D. Tex. 2000))*; *In re Hiles, 2002 Bankr. LEXIS 912, 2002 WL 32709406, at \*3 (Bankr. C.D. Ill. Aug. 15, 2002)* (until the bankruptcy court determines dischargeability of creditor's state law claims under *§ 523(a)(2)* and *(4)* in a timely-filed adversary proceeding, **[\*21]** it remains an open question whether such claims against the debtor are discharged or not).

*Section 523* compels this result. *Section 523(a)* provides, in pertinent part, that "[a] discharge under *section 727* . . . does not discharge an individual debtor from any debt," and then goes on to list the 19 exceptions, which includes *paragraphs (2)*, *(4)* and *(6)*. *Section 523(c)(1)* provides that, except in certain circumstances not relevant here, "the debtor shall be discharged from a debt of a kind specified in *paragraph (2)*, *(4)*, or *(6)* of *subsection (a)* of this

Case 8:25-ap-01105-SC   Doc 364-1   Filed 06/08/26   Entered 06/08/26 10:11:35   Desc
Notice of Unreported Cases   Page 13 of 26
2016 Bankr. LEXIS 3654, *21

Page 11 of 12

section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under *paragraph (2)*, *(4)*, or *(6)*, as the case may be, of *subsection (a)*."

Hence, **HN7** a debt is not discharged if a timely complaint is filed objecting to discharge of that debt under *§ 523(a)(2)* (fraud), or (4)(fraud or defalcation while acting in fiduciary capacity, larceny, or embezzlement) or (6) (willful and malicious injury) unless and until the bankruptcy court denies the objection. See also *In re Eastberg, 440 B.R. at 857* (holding same and citing string of cases). Furthermore, as the bankruptcy court correctly observed, the discharge order in this case specifically contemplates the possibility of a determination by the bankruptcy court, after the date **[*22]** of discharge, that certain debts under *§ 523* may be nondischargeable. See *Gray v. Berry (In re Gray), 2000 U.S. Dist. LEXIS 23683, 2000 WL 34239244, at *5 (W.D. Wis. Apr. 12, 2000)* (so holding); *Union Nat'l Bank of Marseilles v. Leigh (In re Leigh), 165 B.R. 203, 222 (Bankr. N.D. Ill. 1993)* (so holding).

Peter raises the same arguments here as he did before the bankruptcy court. Each lack merit. As the court correctly noted, Peter has a fundamental misunderstanding of bankruptcy law. Because Robert filed a timely dischargeability action against Peter seeking to except the debts at issue in the Probate Action from Peter's discharge under *§ 523(a)(4)* and *(6)*, and because the bankruptcy court has not yet determined the dischargeability of these debts in the pending adversary proceeding, the debts have not been discharged and the discharge injunction was and is not applicable to them. The fact that Peter's discharge came before the Probate Action went to trial and the judgments were entered is of no moment due to the pending adversary proceeding, and the bankruptcy court's agreement that the Probate Action should proceed and resolve issues necessary for the bankruptcy court's nondischargeability determinations. Therefore, the discharge injunction did not prevent Robert from establishing Peter's liability in the Probate Action. *In re Lakhany, 538 B.R. at 562-63*. Consequently, Peter's argument that the trial in the Probate Action and related **[*23]** state court judgments are "void" because they were based on discharged debts also fails.

Peter also contends that the state court lacked jurisdiction to decide the fraud claim of $973,520, because it is a "debt of a kind specified in *§ [523(a)(2)*, *(4)* or *(6)]*" that only the bankruptcy court could consider. **HN8** While he is correct that the determination of whether a debt is dischargeable under *§ 523(a)(2)*, *(4)* or *(6)* is exclusively within the bankruptcy court's jurisdiction, *Rein v. Providian Fin. Corp., 270 F.3d 895, 904 (9th Cir. 2001)*, the predicate facts which may form the basis for such a determination may be litigated in state court. *In re Lakhany, 538 B.R. at 560* (bankruptcy courts often make nondischargeability determinations via issue preclusion on facts determined elsewhere) (citing *Grogan v. Garner, 498 U.S. 279, 290, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991))*; see also *Allred v. Kennerley (In re Kennerley), 995 F.2d 145, 148 (9th Cir. 1993)* ("Had [creditor] filed a timely complaint to determine dischargeability, he could have returned [to the bankruptcy court] after the state court action" and had "the dischargeability of the debt determined."); *In re Eastberg, 440 B.R. at 862* (bankruptcy court can modify the automatic stay to permit state court litigation to proceed to judgment for purpose of establishing a debt at issue in a pending nondischargeability action so that issue preclusion may be used to limit what is later raised in the nondischargeability action).

Peter confuses the **[*24]** state court establishing his **liability** on the debt at issue in the Probate Action, with a determination of **whether that debt is dischargeable**. As to the former, the state court was free to determine liability and damages given the stay relief order. As to the latter, nothing in the record suggests the state court has made any determinations as to whether the debt at issue is "nondischargeable."

**HN9** Necessary to a finding of contempt under *§ 105(a)* is that the offending party willfully violated the discharge injunction. Because no such injunction was applicable to the debts at issue as a matter of law, Robert could not have violated it. Accordingly, the bankruptcy court did not abuse its discretion in denying the Contempt Motion.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.

**End of Document**

Ⓐ Neutral
As of: February 26, 2026 3:33 PM Z

# *Nida v. Allcom*

United States District Court for the Central District of California

March 11, 2020, Decided; March 11, 2020, Filed

8:17-cv-02162-JLS (JDEx)

**Reporter**
2020 U.S. Dist. LEXIS 87401 *

Nancy Nida v. Allcom, et al.

**Prior History:** *Nida v. Allcom, 2018 U.S. Dist. LEXIS 227934 (C.D. Cal., Apr. 30, 2018)*

## Core Terms

sanctions, spoliation, documents, boxes, subpoena, speculation, deposition, discovery, trashed, nonparty, records, failure to comply, destroyed, moving party, discovery motion, inherent power, no evidence, declaration, confer, contempt, opposing party, motions

**Counsel:  [*1]** For Nancy Nida, an individual, Plaintiff: Brodie Hugh Smith, LEAD ATTORNEY, Anthony L Lanza, Lanza and Smith PLC, Irvine, CA USA.

For Allcom, A Nevada corporation, Defendant: Lawrence J Dreyfuss, LEAD ATTORNEY, The Dreyfuss Firm PLC, Irvine, CA USA.

**Judges:** John D. Early, United States Magistrate Judge.

**Opinion by:** John D. Early

## Opinion

**CIVIL MINUTES - GENERAL**

(In Chambers) Order Denying Plaintiff's Motion for Discovery Sanctions (Dkt. 130)

**I**.

**INTRODUCTION**

On December 18, 2019, Plaintiff Nancy Nida ("Plaintiff") filed a Motion for Sanctions against Cery Perle ("Perle") for Spoliation of Evidence pursuant to the Court's inherent powers and pursuant to *Federal Rules of Civil Procedure Rules 45* ("*Rule 45*") and *37* ("*Rule 37*"). Dkt. 130 ("Motion"). Plaintiff seeks $378,703 in sanctions, along with costs and attorney's fees incurred in bringing this Motion. Id. at 1, 13.

On February 3, 2020, the Honorable Josephine L. Staton, United States District Court Judge, issued an order referring the Motion, described as a "Motion for Discovery Sanctions," to this Court. Dkt. 133. Thereafter, this Court reset the Motion's hearing date to March 12, 2020. Dkt. 134. In addition, the Court directed that

by February 10, 2020, Plaintiff shall show cause in writing why the Motion, which seeks sanctions under **[*2]** *Fed. R. Civ. P. 37* and is characterized as a discovery motion by Judge Staton, should not be denied without prejudice for failure to comply with *Local Rule 37*. . . . Plaintiff may comply with this Order by withdrawing the Motion by February 10, 2020. Such withdrawal would be without prejudice to Plaintiff proceeding with a renewed motion under *Local Rule 37* supported by a joint stipulation, or a renewed motion under *Local Rule 6-1*, *7-9*, and *7-10* if supported by an appropriate declaration under *Local Rule 37-2.4*. No other submissions shall be permitted without prior authorization from the Court.

Dkt. 134. Plaintiff did not file a response by February 10, 2020 and neither explained in writing why the Motion should not be denied without prejudice for noncompliance with *Local Rule 37* nor withdrew the Motion by, or after, the specified deadline. Perle filed his Opposition to the Motion on February 11, 2020. Dkt. 135 ("Opp."). Plaintiff filed her Reply in support of the Motion on February 27, 2020. Dkt. 136 ("Reply").

The Court finds the Motion appropriate for decision without oral argument and vacates the March 12, 2020 hearing. See *Local Rule 7-15*. For the reasons set forth below, the Court denies the Motion.

**II**.

**FACTUAL BACKGROUND**

On December 12, 2017, Plaintiff filed the original complaint in this **[*3]** action against two individuals and three entities for breach of contract, fraud, fraudulent conveyance, RICO violations, breach of fiduciary duty, and common counts. See Dkt. 1. On February 14, 2018, Plaintiff filed the operative First Amended Complaint adding an additional claim for breach of fiduciary duty and adding Perle and Spare Backup, Inc. ("SPBU") as defendants. See Dkt. 30. Plaintiff filed a proof of service reflecting that Perle was served with process on March 13, 2018. Dkt. 52. On April 20, 2018, Plaintiff applied for entry of default against SPBU, with the application renewed and default entered on May 31, 2018. Dkt. 69, 77, 78.

In May 2018, Perle's counsel sent to Plaintiff's counsel documents relating to Plaintiff, defendant Bruce Boyd, and SPBU that Plaintiff had located. See Motion at 5; Opp. at 3; Dkt. 135-2 at 5-45 (CM/ECF pagination). About one month later, Plaintiff and Perle entered into a settlement agreement and release, effective on June 1, 2018, in which Perle agreed to be deposed and to provide a signed declaration under penalty of perjury. See Dkt. 130-1 at 109-12 (CM/ECF pagination), 135-2 at 52-56 (CM/ECF pagination). Plaintiff voluntarily dismissed Perle as a **[*4]** defendant with prejudice on June 6, 2018. See Motion at 3; Dkt. 80.

On May 8, 2019, about 11 months after the settlement and after entry of default against SPBU, and after Judge Staton had administratively closed the case (see Dkt. 128), Plaintiff served a subpoena on Perle to testify at a deposition and to produce 27 categories of documents. Motion at 1, 3; Dkt. 130-1 at 15-19 (CM/ECF pagination). According to Plaintiff, the "primary purpose" of deposing Perle was to "determine how and where, after dissolution, the assets of SPBU," against which Plaintiff had obtained a default judgment, "were distributed." Motion at 4. Plaintiff suggests that Perle would have such information because Perle was SPBU's "CEO, President, Director, and primary owner." Motion at 1. On June 25, 2019, more than a year after the settlement and after Judge Staton had closed the case, Plaintiff's counsel deposed Perle. See Motion at 3. In response to the subpoena's request for documents, Perle provided Plaintiff the same documents he had given in May 2018 before the settlement. See Motion at 5; Reply at 4.

At Perle's deposition, Plaintiff's counsel questioned Perle about documents that were requested in the subpoena **[*5]** as follows:

> **Q (Plaintiff's Counsel): Okay. Under the heading "Documents Requested," did you make an effort to search for each and every one of these 27 categories of documents**?
> A (Perle): Yes.

**Q: And are the documents that you produced through counsel all that you were able to find in response to the subpoena**?
A: Yes.

**Q: How long did you spend looking for the—these 27 categories of documents**?
A: I don't recall.

**Q: Do you have a—do you maintain a file with respect to SPBU**?
A: No.

**Q: Do you maintain a file with respect to [Plaintiff]**?
A: No.

**Q: Where did you find the documents that you did find and produce**?
A: I don't recall; that was last year. Last year? Yeah.

**Q: You don't recall where you found the documents that you produced**?
A: That's correct.

**Q: Did you search on your computer for those records**?
A: I searched in my own personal boxes.

**Q: And are those boxes located at your residence**?
A: Yes. Well, not anymore.

**Q: Your prior residence**?
A: Yes

**Q: Where was that residence**?
A: In Miami.

**Q: And do you still have the boxes from which you retrieved the records that you did produce**?
A: No.

**Q: What happened to those boxes**?
A: Trashed.

**Q: When were they trashed**?
A: Last year.

**Q: At the time you moved**?

A: Yeah. No, not **[*6]** at the time I moved. Just cleaning the house. Just cleaning.

**Q: How many boxes were destroyed at the time**?
A: I don't recall.

**Q: As part of the process of looking for the documents in these 27 categories, did you call anyone, other than your counsel, to look for these records**?
A: No.

**Q: Did you call any accountants**?
A: No.

**Q: Did you call any former business associates**?
A: No.

Case 8:25-ap-01105-SC   Doc 364-1   Filed 06/08/26   Entered 06/08/26 10:11:35   Desc
Notice of Unreported Cases   Page 18 of 26
2020 U.S. Dist. LEXIS 87401, *6

Page 4 of 9

**Q: Any former officers or directors of the company**?

A: No.

**Q: Any auditors**?

A: No.

Dkt. 130-1 at 142 (CM/ECF pagination). Plaintiff filed the Motion roughly six months after Perle's deposition, based largely on Perle's deposition testimony.

**III**.

**LEGAL STANDARD**

**A. _Local Rule 37_**

*Local Rules 37-1 through 37-4* set forth the preferred procedures for the filing of a discovery motion in this Court. Under *Local Rule 37-1*:

> Before filing any motion relating to discovery under *F.Rs.Civ.P. 26-37*, counsel for the parties must confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible. It is the responsibility of counsel for the moving party to arrange for this conference. If both counsel are located in the same county, the conference must take place in person at the office of the moving party's counsel unless the parties agree to meet someplace **[*7]** else. If both counsel are not located in the same county, the conference may take place telephonically. Unless relieved by written order of the Court upon good cause shown, counsel for the opposing party must confer with counsel for the moving party within ten days after the moving party serves a letter requesting such conference. The moving party's letter must identify each issue and/or discovery request in dispute, state briefly as to each such issue/request the moving party's position (and provide any legal authority the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought.

*Local Rule ("L.R.") 37-1*. "If counsel are unable to settle their differences, they must formulate a written stipulation unless otherwise ordered by the Court. The stipulation must be filed and served with the notice of motion." *L.R. 37-2*. "The stipulation must contain all issues in dispute and, as to each such issue, the contentions and points and authorities of each party." *L.R. 37-2.1*. *Local Rule 45-1*, entitled "Motions Relating to Discovery Subpoenas," provides: "Except with respect to motions transferred to this district pursuant to *[Rule] 45(f)*, *L.R. 37* applies to **[*8]** all motions relating to discovery subpoenas served on (a) parties and (b) non-parties represented by counsel." If a discovery motion is not accompanied by a *L.R. 37-2* joint stipulation, counsel for the moving party must submit a declaration "establishing that the opposing counsel (a) failed to confer in a timely manner in accordance with *L.R. 37-1*; (b) failed to provide the opposing party's portion of the joint stipulation in accordance with *L.R. 37-2.2*; or (c) refused to sign and return the joint stipulation after the opposing party's portion was added." *L.R. 37-2.4*. "The Court will not consider any discovery motion in the absence of a joint stipulation or declaration from counsel for the moving party establishing" the foregoing. *L.R. 37-2.4* (emphasis added).

Courts may deny discovery motions for failure to comply with the Local Rules' requirements for such motions. See *L.R. 37-2.4*; see also *Pina v. Lewis, 717 F. App'x 739, 740 (9th Cir. 2018)* (holding district court may properly deny "a motion to compel for failing to comply with local rules"); *Tri-Valley CARES v. U.S. Dep't of Energy, 671 F.3d 1113, 1131 (9th Cir. 2012)* ("Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion."); *Lumber Liquidators, Inc. v. Sullivan, 2012 U.S. Dist. LEXIS 143950, 2012 WL 4464867, at *4 (C.D. Cal. Aug. 31, 2012)* (denying discovery motion for failure to comply with *L.R. 37-2*); *So v. Land Base, LLC, 2009 U.S. Dist. LEXIS 71507, 2009 WL 2407954, at *2 (C.D. Cal. Aug. 4, 2009)* (same).

2020 U.S. Dist. LEXIS 87401, *8

## B. Sanctions for Spoliation of Evidence

### 1. The Standard for Spoliation [*9]

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence[,] in pending or reasonably foreseeable litigation.'" *Jerry Beeman & Pharmacy Servs., Inc. v. Caremark Inc., 322 F. Supp. 3d 1027, 1034 (C.D. Cal. 2018)* (quoting *Reinsdorf v. Skechers U.S.A. Inc., 296 F.R.D. 604, 625-26 (C.D. Cal. 2013))*. Generally, a party seeking sanctions for spoliation must show: "(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence [.]" *Galicia, 2018 WL 6314191, at *4* (quoting *Surowiec v. Capital Title Agency, Inc., 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011))*; see *Rockman Co. (USA) v. Nong Shim Co. 229 F. Supp. 3d 1109, 1121 (N.D. Cal. 2017)* (same). Courts in the Ninth Circuit "generally agree" that "as soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Apple Inc. v. Samsung Elecs. Co., 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012)* (quoting *In re Napster, Inc., 462 F. Supp. 2d at 1067*); see also *CTC Glob. Corp. v. Huang, 2019 WL 6357271, at *2 (C.D. Cal. July 3, 2019)* (quoting *In re Napster, Inc., 462 F. Supp. 2d at 1067*, for same proposition).

A claim of spoliation must rest on more than speculation. See *Reinsdorf, 296 F.R.D. at 631* ("Mere speculation that other deleted documents may exist that might be helpful to a party's case is . . . an insufficient basis for a finding of spoliation."); see also *Galicia, 2018 WL 6314191, at *4* ("The case law on [spoliation] is clear that the burden **[*10]** for showing [spoliation] occurred requires more than a mere suggestion or implication."); *Best Lockers, LLC v. Am. Locker Grp., Inc., 2013 WL 12131586, at *6 (C.D. Cal. Mar. 27, 2013)* (denying spoliation sanctions because the moving party's request is "based upon speculative, unfounded assertions rather than specific evidence").

"There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under *Rule 37* against a party who 'fails to obey an order to provide or permit discovery.'" *Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006)* (quoting *Fed. R. Civ. P. 37(b)(2)(A)*). A court may sanction spoliation of evidence by imposing monetary sanctions. See *In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006)*; see also *Galicia v. Nat'l R.R. Passenger Corp., 2018 U.S. Dist. LEXIS 227031, 2018 WL 6314191, at *2 (C.D. Cal. July 20, 2018)*.

### 2. *Rule 37* Spoliation Sanctions Are Not Available Against Nonparties

A court may not impose *Rule 37(b)* sanctions against a nonparty for asserted noncompliance with a deposition subpoena issued under *Rule 45*.[1] See *Sali v. Corona Reg'l Med. Ctr., 884 F.3d 1218, 1224 (9th Cir. 2018)* (other than contempt, "[n]one of the other sanctions available under *Rule 37* are available against the nonparty" who fails to comply with a *Rule 45* subpoena); see also *Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 494 n.4 (9th Cir. 1983)* (noting that *Rule 37* does not authorize an award of expenses for a motion to compel nonparties to produce documents); *Genx Processors Mauritius Ltd. v. Jackson, 2018 WL 5777485, at *9 (D. Nev. Nov. 2, 2018)* ("The court may not use the enforcement remedies contemplated in *Rule 37* for **[*11]** . . . nonparties' failure to comply with a subpoena" (citing *Pennwalt Corp., 708 F.2d at 494*)); *Jerry Beeman & Pharmacy Servs., Inc., 322 F. Supp. 3d at 1034 n.4* (explaining sanctions under *Rule 37(b)(2)* were not warranted as the moving party did not show "a particular discovery order that ha[d] been violated," but approving inherent authority sanctions).

---

[1] *Rule 37(a)(5)* permits the imposition of an award of reasonable expenses, including attorney's fees, incurred in successfully making or defeating a discovery motion to any person or entity, including a non-party, without requiring a proof of a violation of a court order. However, *Rule 37(a)(5)* does not authorize separate sanctions for spoliation. Separately, *Rule 37(e)* provides a process for determining the appropriate response for an alleged failure to preserve electronically stored information ("ESI"), which is not at issue here.

3. *Rule 45* and Inherent Authority Sanctions

Unlike *Rule 37*, which does not apply to spoliation sanctions against nonparties as explained above, a court may impose sanctions against a nonparty for failure to comply with a subpoena for document production pursuant to *Rule 45*. See *Fed. R. Civ. P. 45(g)*; *Pennwalt Corp., 708 F.2d at 494*; *McAllister v. St. Louis Rams, LLC, 2018 WL 6164281, at *2 n.4 (C.D. Cal. July 2, 2018)* ("*Rule 45* is only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum" (citing *Pennwalt Corp., 708 F.2d at 494*)).

Under *Rule 45*, a court may exercise its contempt powers when a person who has been served with a subpoena "fails without adequate excuse to obey the subpoena or an order related to it." *Fed. R. Civ. P. 45(g)*. Contempt sanctions are among a court's inherent powers. See *Shillitani v. United States, 384 U.S. 364, 370, 86 S. Ct. 1531, 16 L. Ed. 2d 622 (1966)*; *Ochoa v. Lopez, 2016 WL 9712071, at *1 (C.D. Cal. June 20, 2016)* ("A court has inherent power to enforce its orders by holding those who violate those orders in civil contempt and issuing corresponding sanctions." (citing *Shillitani, 384 U.S. at 370*)). Instead of providing a separate basis for imposing spoliation sanctions, *Rule 45* thus allows a court to use its inherent **[*12]** powers to impose contempt sanctions on a party, or nonparty, for defying a subpoena by improperly destroying evidence.

**IV**.

**DISCUSSION**

The Motion fails because Plaintiff failed to comply with *Local Rule 37*, and the sanctions Plaintiff seeks are not warranted under the applicable authorities.

**A. Plaintiff Failed to Comply with *Local Rule 37***

The Motion is a discovery motion, as it seeks relief under *Rule 37* and *45*. See *L.R. 37-1*; *45-1*. As such, the Motion must either be supported by a *Local Rule 37-2* joint stipulation or a declaration from Plaintiff's counsel "establishing that the opposing counsel (a) failed to confer in a timely manner in accordance with *L.R. 37-1*; (b) failed to provide the opposing party's portion of the joint stipulation in accordance with *L.R. 37-2.2*; or (c) refused to sign and return the joint stipulation after the opposing party's portion was added." *L.R. 37-2.4* (emphasis added). As noted, "[t]he Court will not consider any discovery motion in the absence of a joint stipulation or declaration from counsel for the moving party establishing" the foregoing. *L.R. 37-2.4* (emphasis added).

Here, the Motion is not supported by joint stipulation or a declaration by Plaintiff's counsel attesting to one of the three failures by counsel set forth in *L.R. 37-2.4*. As a result, under the Local **[*13]** Rules, the Court "will not consider" the Motion. Id.; see also *Pina, 717 F. App'x at 740*; *Tri-Valley CARES, 671 F.3d at 1131*.

Further, the Court will not overlook Plaintiff's failure to comply with the Local Rules here. First, as set forth further below, the Motion is substantively without merit, relation to actions taken six to eighteen months before the filing of the Motion. A proper meet and confer, started with a letter from Plaintiff's counsel setting forth her position, with legal authority (*L.R.37-1*), followed by an in-person meeting with Perle's counsel (id.), whose office address appears to be just a few blocks from the offices of Plaintiff's counsel, in which the parties engaged in a "good faith effort to eliminate the necessity for the motion or to eliminate as many of the disputes as possible" may very well have resulted in Plaintiff's counsel recognizing the defects in the Motion.

Further, when the Court alerted Plaintiff to the failure to comply with *Local Rule 37* on February 5, 2020 and ordered Plaintiff to show cause in writing why the Motion should not be denied on that basis by February 10, 2020, Plaintiff ignored the Court's order and did not file any response, much less show cause by February 10. Plaintiff further flouted the order by failing **[*14]** to address the issue or acknowledge the order in her Reply filed February 27,

2020. Had Plaintiff heeded the February 5, 2020 order, she could have completed a proper *Local Rule 37* meet and confer and joint stipulation process in time to file a proper motion for hearing on March 12, 2020 were those meet and confer efforts unsuccessful. Instead, Plaintiff chose to ignore the Court's order and the dictates of *Local Rule 37*. The Motion is properly denied for failure to comply with *Local Rule 37*.

### B. The Sanctions Sought by Plaintiff Are Not Warranted

In addition to violating the Local Rules, the Motion fails substantively as well. The sanctions requested by Plaintiff are unavailable under *Rule 37* against Perle in this case. Further, as Plaintiff has not met her burden to show by admissible evidence, as opposed to speculation, that Perle committed an act of spoliation, sanctions are unwarranted under *Rule 45* and the Court's inherent power.

### 1. The Requested Sanctions Are Not Available Under *Rule 37*

Plaintiff argues in part that the Court should impose spoliation sanctions pursuant *Rule 37*. But contrary to Plaintiff's contention, *Rule 37* does not offer a basis for imposing such sanctions in this case. First, as noted above: (i) *Rule 37(a)* does not provide sanctions for spoliation, **[\*15]** as opposed to an award of reasonable attorney's fees and expenses incurred in a discovery motion to a prevailing party; and (ii) *Rule 37(e)* applies only to a failure to preserve ESI, which is not at issue here.

Second, to impose sanctions pursuant to *Rule 37(b)*, the only other potentially applicable provision in *Rule 37*, a party must have violated a discovery order. See *Fed. R. Civ. P. 37(b)*. Here, the alleged act of spoliation—the "trashing" of boxes—took place a year before the subpoena to Perle was issued. Thus, there was no subpoena or order that even arguably could have been violated by the "trashing" of the boxes. Further, although he had been a defendant, as he was dismissed "with prejudice" more than a year before his deposition, Perle was not a party at the time of the deposition. Nor has Plaintiff proven Perle was a party at the time he "trashed" the boxes. In fact, the timeline makes it unlikely, as Perle was served in March 2018, provided the documents at issue to Plaintiff in May 2018, and was dismissed on June 6, 2018. Lastly, although not a basis for denying the Motion, the Court notes that the "deposition" of Perle, taken in June 2019 after the case was administrative closed by Judge Staton (see Dkt. 128), appears **[\*16]** to have been taken in violation of Judge Staton's operative Scheduling Order, by which all fact discovery was to be concluded by October 19, 2018 and all expert discovery was to be concluded by December 29, 2018. See Dkt. 105, 112 (orders denying requests to extend pretrial dates). Plaintiff did not obtain a writ of execution under *Fed. R. Civ. P. 69* and the deposition does not appear to have been conducted as a post-judgment debtor or third-party examination.

As Perle is currently not a party and was not a party at the time of the deposition, and as Plaintiff has not offered evidence that any "spoliation" took place when Perle was a party to this action, sanctions for spoliation are not available under *Rule 37* against Perle. See *Sali, 884 F.3d at 1224*.

### 2. Sanctions Are Not Warranted Under *Rule 45* or the Court's Inherent Power

Assuming that spoliation sanctions could be imposed against a non-party who had not violated a prior court order (cf. *Poturich v. Allstate Ins. Co., 2015 U.S. Dist. LEXIS 187149, 2015 WL 12766048, at \*2 (C.D. Cal. Aug. 11, 2015)* (stating that it would be premature to find a nonparty in contempt under *Rule 45(g)* where there was no prior court order compelling discovery in place)), Plaintiff has not met her burden of demonstrating that Perle destroyed any evidence. As a result, sanctions under *Rule 45* or the Court's inherent authority is unavailable. **[\*17]** See *Lund v. 3M Co., 2016 U.S. Dist. LEXIS 147072, 2016 WL 6208399, at \*2-3 (C.D. Cal. Oct. 24, 2016)*; see also *Rockman Co. (USA), 229 F. Supp. 3d at 1121-22*.

Although Plaintiff bases the Motion on "destroyed records" of SPBU that Perle "admitted" during his deposition, the evidence offered by Plaintiff proves no such thing. At his June 2019 deposition, Perle testified that in 2018, he located documents related to the lawsuit in his "personal boxes" stored at his home and provided those documents to his counsel, who provided them to counsel for Plaintiff. Those documents located in 2018 constituted all the documents he could find that were responsive to the subpoena. In 2018, some unspecified time after he removed the documents from the boxes, Perle "trashed" those "personal boxes" as part of a house cleaning. There is no evidence of what was in the boxes at the time they were "trashed." Plaintiff's counsel apparently did not ask Perle at his deposition what else was in those "personal boxes" at the time they were trashed. There is no evidence that any documents relevant to the litigation were in the personal boxes at the time they were trashed as part of a housecleaning.

Although counsel did not ask Perle at his deposition what was in those personal boxes at the time they **[\*18]** were trashed, Plaintiff asks the Court to speculate that there were unproduced, relevant documents in those boxes at the time they were trashed. However, "[m]ere speculation that other deleted documents may exist that might be helpful to a party's case is . . . an insufficient basis for a finding of spoliation." _Reinsdorf, 296 F.R.D. at 631_; see also _Galicia, 2018 WL 6314191, at \*4_ ("The case law on [spoliation] is clear that the burden for showing [spoliation] occurred requires more than a mere suggestion or implication."); _Best Lockers, LLC, 2013 WL 12131586, at \*6_ (denying spoliation sanctions because the moving party's request is "based upon speculative, unfounded assertions rather than specific evidence"). Thus, Plaintiff has not shown that relevant evidence was destroyed, or even likely destroyed, a necessary requirement for a claim of spoliation.[2]

Further, in addition to there being no evidence of actual destruction of relevant evidence, Plaintiff has offered no evidence, as opposed to argument, that Perle acted with a sufficiently "culpable state of mind" for sanctions in the non-ESI context. As noted, Plaintiff relies primarily on Perle's deposition testimony. After Perle testified that he "trashed" his "personal boxes" as part of a housecleaning, Plaintiff apparently asked **[\*19]** no further questions on the topic, not asking, for instance, whether Plaintiff inspected his personal boxes to determine their contents before "trashing" them. Thus, in addition to there being no evidence that Perle destroyed relevant evidence, there is also no evidence that in "trashing" his personal boxes, whose contents are unknown to the Court, Perle acted intentionally, recklessly, or even negligently. Had Plaintiff inquired further, or were there other evidence of Perle's intent at the time, perhaps a showing of negligence or worse could have been made. But on this record, Plaintiff has not shown a sufficiently culpable state of mind to support the spoliation sanctions she seeks.

Lastly, Plaintiff again offers only speculation to tie the speculative missing records with a "loss" of nearly $400,000. Plaintiff speculates that the personal boxes Perle destroyed "likely" stored "almost the entirety of SPBU's corporate records, from inception to dissolution[,]" that "likely . . . demonstrate[ ] fraudulent conveyance liability for the missing assets of SPBU." Motion at 3, 9. Indeed, Plaintiff's insistence that the boxes "could have included" a laundry list of corporate records—"balance **[\*20]** sheets, income statements, tax returns, payroll records, corporate formation binders, investor relations, stock ledgers, bank records, check registers, accounts payable, accounts receivable, vendor files, and much more"—underscores the lack of specific evidence on what relevant documents, if any, were in the boxes Perle discarded. Motion at 9. On top of this speculation, Plaintiff adds another level of speculation, that is, that armed with these unknown records, she would have been able to recover computer equipment allegedly worth, in 2012, $378,703, owned at one time by SPBU. Perle disputes the valuation. But even if SPBU owned equipment worth $378,703 in 2012, Plaintiff concedes she does not know how, or presumably when, the computer equipment at issue was disposed of by SPBU. See Motion at 8. Despite conceding she does not know how the equipment was disposed of, Plaintiff simply asserts that Perle "should therefore be responsible for the damages resulting from his illegal actions." Id. However, Plaintiff offers no evidence how, at the time of Plaintiff's deposition in June 2019, or even as of May 2018 when Perle's counsel initially produced records to Plaintiff's counsel (Dkt. **[\*21]** 135-2 at 7), Plaintiff would have been able to recover the equipment that was disposed of at some unknown time in

---

[2] To the extent Plaintiff relies on Perle's lack of knowledge as to the disposition of records or assets of SBPU, such a lack of knowledge does not itself constitute spoliation of evidence. To the extent Plaintiff asserts Perle is feigning such a lack of knowledge, she again offers only speculation.

some unknown manner. Plaintiff's claim for "damages" allegedly suffered as a result of the speculative destruction of evidence is equally speculative and unsupported by evidence of causation.

Mere speculation is insufficient to support a claim of spoliation of evidence. See *Reinsdorf, 296 F.R.D. at 631*. Here, Plaintiff's claims are based entirely on speculation. Sanctions for alleged spoliation are not warranted under any theory here.


**V**.


**CONCLUSION AND ORDER**

For the foregoing reasons, the Court DENIES the Motion (Dkt. 130).

IT IS SO ORDERED.

---

**End of Document**

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: DINSMORE & SHOHL, LLP, 191 W. Nationwide Blvd., Suite 200, Columbus, OH 43215

A true and correct copy of the document entitled (*specify*):

**NOTICE OF UNREPORTED CASES IN PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ISSUANCE OF AN ORDER TO SHOW CAUSE REGARDING CONTEMPT AGAINST OPTIMUMBANK AND OPTIMUMBANK HOLDINGS, INC. FOR FAILURE TO COMPLY WITH THE ORDER OF THIS COURT AND HOLDING OPTIMUMBANK AND OPTIMUMBANK HOLDINGS, INC. IN CONTEMPT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  06/08/2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  06/08/2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Judge's Copy**
Honorable Scott C. Clarkson
United States Bankruptcy Court, Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130/Ctrm 5C
Santa Ana, CA 927014593

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/08/26 | Karen S. Hockstad | /s/ Karen S. Hockstad |
|----------|-------------------|------------------------|
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Joseph Boufadel on behalf of Defendant Slate Advance LLC
jboufadel@salvatoboufadel.com, Gsalvato@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Joseph Boufadel on behalf of Interested Party Courtesy NEF
jboufadel@salvatoboufadel.com, Gsalvato@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Baruch C Cohen on behalf of Defendant Solomon Feig
BaruchCohen@Baruchcohenesq.com, paralegal@baruchcohenesq.com

Christopher Ghio on behalf of Plaintiff Richard A Marshack
Christopher.Ghio@dinsmore.com, bonnie.connolly@dinsmore.com

David T Hayek on behalf of Defendant Optimum Bank Holdings, Inc.
dhayek@hinshawlaw.com

David T Hayek on behalf of Defendant Optimumbank
dhayek@hinshawlaw.com

David T Hayek on behalf of Defendant Moishe Gubin
dhayek@hinshawlaw.com

Karen Hockstad on behalf of Plaintiff Richard A Marshack
karen.hockstad@dinsmore.com, sylvia.lawrence@dinsmore.com

Karen Hockstad on behalf of Trustee Richard A Marshack (TR)
karen.hockstad@dinsmore.com, sylvia.lawrence@dinsmore.com

Brandon J. Iskander on behalf of Interested Party Courtesy NEF
biskander@goeforlaw.com, kmurphy@goeforlaw.com; jfountain@goeforlaw.com

Ira David Kharasch on behalf of Defendant Genesis Equity Group Funding LLC
ikharasch@pszjlaw.com

Yosina M Lissebeck on behalf of Plaintiff Richard A Marshack
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com; linda.dominguez@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com

Victoria Newmark on behalf of Defendant Genesis Equity Group Funding LLC
vnewmark@pszjlaw.com, hdaniels@pszjlaw.com; bdassa@pszjlaw.com; hwinograd@pszjlaw.com

Victoria Newmark on behalf of Defendant Solomon Feig
vnewmark@pszjlaw.com, hdaniels@pszjlaw.com; bdassa@pszjlaw.com; hwinograd@pszjlaw.com

Brian A Paino on behalf of Defendant Optimum Bank Holdings, Inc.
bpaino@hinshawlaw.com, hmosothoane@hinshawlaw.com; crico@hinshawlaw.com

Brian A Paino on behalf of Defendant Optimumbank
bpaino@hinshawlaw.com, hmosothoane@hinshawlaw.com; crico@hinshawlaw.com

Brian A Paino on behalf of Defendant Optimumbank.com
bpaino@hinshawlaw.com, hmosothoane@hinshawlaw.com; crico@hinshawlaw.com

Brian A Paino on behalf of Defendant Moishe Gubin
bpaino@hinshawlaw.com, hmosothoane@hinshawlaw.com; crico@hinshawlaw.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Matthew Sommer on behalf of Plaintiff Richard A Marshack
matthew.sommer@dinsmore.com, carrie.davis@dinsmore.com

Matthew Sommer on behalf of Trustee Richard A Marshack (TR)
matthew.sommer@dinsmore.com, carrie.davis@dinsmore.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

2.      **TO BE SERVED VIA U.S. MAIL**

| | |
|---|---|
| Funding Gateway, Inc. | Funding Gateway, Inc. |
| Mark Fuchs c/o The Corporation | Marchs, c/o File Right RA Services, LLC |
| 5314 16th Avenue, Suite 139 | 330 Changebridge Road, Suite 101 |
| Brooklyn, NY 11204 | Pine Brook, NY 07058 |
| | |
| World Global Fund, LLC | Funding Gateway, Inc. |
| n/k/a Glass Media, LLC | And each of its assumed names |
| Andrew Pierce c/o Cloud Peak Law | c/o Cloud Peak Law |
| 1095 Sugar View Drive, Suite 500 | 1095 Sugar View Drive, Suite 500 |
| Sheridan, WY 82801 | Sheridan, WY 82801 |